## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN AND NORA SCHUTT, a/n/f for A.S.; CHERISH HOOPER, a/n/f J.H.; GUADALUPE MARES, a/n/f for A.N., PLAINTIFFS, | § § § § | |
| v. | § § | |
| GARLAND INDEPENDENT SCHOOL DISTRICT, MICHELLE BURFORD, LESLIE COBURN, GRAYDENE BROWN, JENNIFER BENAVIDEZ and MICHAEL ROELL, DEFENDANTS; and | § § § § § § § | CIVIL ACTION NO. 3:17-cv-01708-B |
| ------------------------------------------------------------------------ | | |
| MICHAEL ROELL, COUNTER-CLAIMANT | § § | |
| v. | § § | |
| PLAINTIFFS; and | § | |
| ------------------------------------------------------------------------ | | |
| Michael ROELL, CROSS-CLAIMANT | § § | |
| v. | § § | |
| GARLAND INDEPENDENT SCHOOL DISTRICT, GRAYDENE BROWN, JENNIFER BENAVIDEZ, CROSS-DEFENDANTS | § § § § | |

## THIRD AMENDED COMPLAINT

**NOW COMES** "A.S." by and through his next friends and legal guardians, Stephen and Nora Schutt; "J.H." by and through his next friend and legal guardian Cherish Hooper; and "A.N." by and through his next friend and legal guardian, Guadalupe Mares (collectively termed "the Plaintiffs" herein) and files this the *Third Amended Complaint* in this cause, alleging that the Garland Independent School District (hereinafter referred to as "GISD" or the "School District")

and Jennifer Benavidez, Michelle Burford, Graydene Brown, Leslie Coburn and Michael Roell, all Individually; violated the various rights of A.S., J.H., and A.N., all as more specifically pled herein. Plaintiffs reserve the right to re-plead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiffs would respectfully show the Court the following:

## I.    BRIEF INTRODUCTION TO THE CASE

1.     In the Fall of 2015, there were allegations that a teacher at the Hudson Middle School ("HMS") in the Garland ISD, and in a unit serving significantly disabled students, had an inappropriate relationship with a female student. The School Principal, Jennifer Benavidez *covered up* the incident and with the assistance of Graydene Brown, a Supervisor for Employee Relations, removed the teacher from the HMS classroom and placed him in another Garland ISD School, the Pathfinder Achievement Academy ("PFAA"), also serving students with significant disabilities, where there was an opening.

2.     Many of the parents asked why the teacher was moved, but there was a conspiracy of silence. The spot at the PFAA opened up because a male student with a disability (A.S.) was physically abused by a teacher, Michael Roell. Apparently when A.S. went to the bathroom, Roell followed him in and when A.S. tried to get away, Roell restrained him and broke his arm. He too had to be removed. The Principal of the PFAA (Leslie Coburn) and Michelle Burford, a School District Representative, *covered up* this incident, just like Benavidez did at HMS.

3.     Again, Graydene Brown was involved, and she moved Roell over to HMS to take the other teacher's place. Not surprisingly, Roell continued to follow male students with

disabilities into the bathroom and abused J.H., A.N. and others.  Benavidez knew that Roell was following male students into the bathroom, and reportedly stated, that if it was mentioned to anyone, that person would be fired.

4.    In the educational industry it's called *Pass The Trash*. It's the well-known tried and true method that School District personnel involved in employment decisions move a teacher who abused a child to another school to cover up the incident.

5.    With the above brief facts in mind, all as more specifically noted below Plaintiffs bring forth claims of discrimination based upon disability pursuant to *Section 504 of the Rehabilitation Act of 1973*, 29 U.S.C. §794 and the *Americans With Disabilities Act*, 42 U.S.C. §12101 et seq.; of discrimination based upon sex or gender based upon *Title IX of the Education Amendments of 1972*; for various Constitutional Claims pursuant to 42 U.S. Code §1983 and a Civil Conspiracy Claim pursuant to 42 U.S. Code §1983.

6.    There is not a week that goes by where there is not some media story about the plight of a young person who is bullied, harassed, assaulted, or even sexually assaulted at their school. Frankly, it is a national epidemic. Unlike the task of containing the spread of a flu virus by means of vaccines and treatment, this type of epidemic is particularly difficult to treat because often the school district itself, as it is in the situation of A.S., J.H., and A.N., as the School District is part of the illness but refuses to recognize its own responsibility.

7.    For the families there is nothing sadder than seeing their own child suffer. To give meaning to their child's experience they feel compelled to tell their story. They feel a duty to do so in the hope the presentation of their story will prevent the same from happening to another family. In the course of this telling, these victims benefit from a healing effect. The healing

and empowering effect is even more pronounced when the story is told before The Court, as the Plaintiffs have chosen to do in this case, so the bright light and sanitizing effect of federal law and a Judge's gaze is focused on this important issue and the School District's failures.

## II. JURISDICTION

8.     Jurisdiction is conferred in this Court pursuant to U.S.C. 1331 and 1343 because the matters in controversy arise under The Constitution and laws of the United States.

## III. VENUE

9.     The events and omissions noted in this cause occurred in the Garland School District which is in the Northern District of Texas- Dallas Division, under 28 U.S.C. §1391, venue is proper before this Court.

## IV. PARTIES

10.    A.S. lives with his parents and legal guardians, Stephen and Nora Schutt (hereinafter referred to as "A.S.' parents" or as "Stephen and Nora"), at 3913 Acorn Green Drive, Garland, Texas 75043. They live within the Garland Independent School District catchment area.

11.    J.H. lives with his mother and legal guardian, Cherish Hooper (hereinafter referred to as "J.H.'s or as "Cherish"), at 2510 Standford Street, #A, Rowlett, Texas 76106. They live within the Garland Independent School District catchment area.

12.    A.N. lives with his mother and legal guardian, Guadalupe Mares, and also lives with his stepfather, Samuel Hernandez at 529 Rivercove, Garland, Texas 75044. They live within the Garland Independent School District catchment area.

13.  The Garland Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, A.S. was a student at the Garland Independent School District. They have been served through their attorneys of record, who are Nona Matthews and Meredith Prykyl Walker of Walsh, Gallegos, Trevino, Russo and Kyle PC; 105 Decker Court, Suite 600; Irving, TX 75062. They have accepted service of this Complaint on behalf of Defendants and filed an Answer as well.

14.  Michelle Burford at all times pertinent to this case was employed in a Supervisory capacity at the Garland Independent School District and participated in the cover up of Roell's assaultive behaviors. This person has been served and has answered by and though her attorneys of record, the Honorable Meredith Prykyl Walker of the Law Firm of Walsh, Gallegos, Trevino, Russo and Kyle P.C., 105 Decker Court, Suite 600; Irving, TX 75062.

15.  Graydene Brown (formerly known as "Unknown School Administrator II") at all times pertinent to this case was employed in a Supervisory capacity at the Garland Independent School District and was a final decision-maker on employment related issues related to Roell and also participated in the cover up of Roell's assaultive behaviors. This person has been served and has answered by and though her attorneys of record, the Honorable Meredith Prykyl Walker of the Law Firm of Walsh, Gallegos, Trevino, Russo and Kyle P.C., 105 Decker Court, Suite 600; Irving, TX 75062.

16.  Leslie Coburn was the Principal at the Pathfinder Achievement Center, and at all times pertinent to this case was employed in a Supervisory capacity at the Garland Independent School District, and was knowledgeable about the acts and omissions of Roell and the abuse A.S. experiences. This person also participated in the cover-up of the incident. This person

has been served and has answered by and though her attorneys of record, the Honorable Meredith Prykyl Walker of the Law Firm of Walsh, Gallegos, Trevino, Russo and Kyle P.C., 105 Decker Court, Suite 600; Irving, TX 75062.

17.    Jennifer Benavidez was the Principal at the Chase Middle School, and at all times pertinent to this case was employed in a Supervisory capacity at the Garland Independent School District and was knowledgeable about the acts and omissions of Roell and other staff, including the mistreatment and abuse of children in her class, including J.H. and A.N. She also participated in the cover up of the incidents noted below. This person has been served and has answered by and though her attorneys of record, the Honorable Meredith Prykyl Walker of the Law Firm of Walsh, Gallegos, Trevino, Russo and Kyle P.C., 105 Decker Court, Suite 600; Irving, TX 75062.

18.    Michael Roell was a teacher with the Garland Independent School District during all pertinent times during the incidents made the basis of this complaint. He is a Defendant in this cause in his individual capacity. He lives at 3866 Pinebluff Lane, Rockwall, Texas 75032. He has been served and has answered.

## V.   STATEMENT OF FACTS

A.    ABOUT A.S.

19.    A.S. was born on August 12, 2001.

20.    During a significant period that makes the basis of this complaint, he was a student at Pathfinder Achievement Academy at the Garland Independent School District.

21.    A.S. has severe autism and Intellectual Disability (formerly known as *Mental Retardation*) that impacts communication and cognition. He requires modifications and accommodations

during the school day so he may have equal access to educational opportunities as compared to his non-disabled peers.

22.     As such, he is in a specialized daily living skills program with the Garland Independent School District.  Notwithstanding his disabilities he has all his own self-help skills and can go to the toilet on his own without the need of adult supervision or assistance.  Nevertheless, because of his various disabling conditions, he may be easily victimized because of such disabilities, as has occurred in this case.

B.     ABOUT J.H.

23.     J.H. was born on April 4, 2001.

24.     J.H. also has an Intellectual Disability (formerly known as *Mental Retardation*) that impacts communication and cognition. He too requires modifications and accommodations during the school day so he may have equal access to educational opportunities as compared to his non-disabled peers. Because of his low functioning level and primitive communication skills he is served in what is called the Life Skills Classroom (or ALE), which is a self-contained classroom at the Hudson Middle School ("HMS").

25.     Notwithstanding his cognitive disabilities he does have all his own self-help skills and can go to the toilet on his own without the need of adult supervision or assistance. Nevertheless, because of his various disabling conditions, he may be easily victimized as has occurred in this case.

C.     ABOUT A.N.

26.     A.N. was born on August 22, 2001.

27.     A.N. also has an Intellectual Disability (formerly known as *Mental Retardation*) that also

impacts his communication and cognition skills, though somewhat less so than A.S. and J.H. He is served in the same Life Skills Classroom as J.H. He too requires modifications and accommodations during the school day so he may have equal access to educational opportunities as compared to his non-disabled peers. He too is easily victimized because of such disabilities, as has occurred in this case.

28. Notwithstanding his cognitive disabilities he does have all his own self-help skills and can go to the toilet on his own without the need of adult supervision or assistance. Nevertheless, because of his various disabling conditions, he may be easily victimized as has occurred in this case.

D. THE FALL OF 2015- PASS THE TRASH & COVER-UP THE ABUSE I

29. In the Fall of 2015 Jennifer Benavidez was the Principal of Hudson Middle School ("HMS") of the Garland Independent School District ("Garland ISD" or "the School District" or "District').

30. Mr. Ryder was the Assistant Principal. HMS contained a particular classroom set up for children who have significant mental and/or physical disabilities ("Life Skills Classroom").

31. In that classroom were 17 children including J.H., A.N. and the children of Rosendo Santos, Cassie Jimenez and Alisha Morales.

32. There was a Classroom teacher, Mr. Kelly and at least two Aides, Justin Peppel and Yolanda Walker.

33. There were allegations that one teacher had inappropriate sexual contact with a female student with disabilities. He was soon removed from the classroom.

34. Parents knew of the removal, though none were told why. The parents of J.H.

(Cherish Hooper) and A.N. (Guadalupe Mares), as well Santos, Jimenez and Morales all asked Benavidez why Kelly was removed but she refused to answer.

35. None of the children were questioned, nor were any parents, as to whether Kelly may have abused other children.

36. To Plaintiffs' knowledge, neither Benavidez, Ryder, nor anyone at HMS filed a complaint with the District's Section 504 or Title IX Coordinator to address the allegations of discrimination based upon disability or sexual harassment.

37. Nor did the Defendants file a complaint with Child Protective Services as required by state law and their own professional Ethical Standards for Educational Professionals.

38. Following a report of bullying, harassment, or assault (physical or sexual) of a student, a school district should provide remedial services to the victim, and provide certain services to the class.

39. For instance, the students should have been given information about "good-touch v. bad touch."

40. There should have been an investigation and assessment whether any of the children needed counseling.

41. There should have been a confidential questionnaire sent home so parents could ask their child if anything had occurred.

42. As we know, none of that happened.

43. Graydene Brown worked for the District and was involved in, and in charge of, certain

employment related issues including transfers.  She agreed to, and helped arrange, the transfer of the offending teacher to another school in the District. Parents were not notified.

44.    As this staff person was a Special Education Teacher, Brown moved him to the Pathfinder Achievement Academy, where a position had just opened up. The first *pass* and *cover-up* was now complete.

E.    THE FALL OF 2015- PASS THE TRASH & COVER-UP THE ABUSE II

45.    On or around 11:45am, on December 10, 2015, at the Pathfinder Achievement Center a nurse at the school, Carol Campbell, contacted Nora Schutt, the parent of another child with a disability (A.S.).

46.    A.S. was injured by a teacher named Michael Roell. Campbell's part in this ongoing pattern of coverups began. It is A.S.' mother's distinct impression that Campbell was downplaying and covering up the severity of the injury.

47.    Apparently A.S., on his first day at the Center, was taken to the bathroom by Roell and on his return from the bathroom A.S. tried to get away from him.

48.    Roell initially reported that he accidently broke A.S.' arm. This incident was captured by video which told a different story;  the injury was purposeful.

49.    Mrs. Schutt took her son for medical treatment.  Medical imaging confirmed a complete fracture of A.S.' humerus bone. A.S. was in extreme pain but due to his disability, could not tell anyone exactly what had occurred.

50.    The attending physician told mother the nature that the fracture appeared to be intentional and referred the family to the hospital for further evaluation and instructed them to call the

police.

51.   Children's Health Social Services were also contacted and a CPS investigation began.

52.   Later that day Nurse Campbell called to check on A.S.  Mrs. Schutt told her about the injury and that she would be at the school offices the next day to discuss what occurred and that she wanted to see a videotape of the incident.

53.   The next day, Mrs. Schutt visited with the School Principal, Leslie Coburn and someone who identified themselves as a "School Advocate," though now known to be Michelle Burford.

54.   They too began the next part of the cover-up process.

55.   The first strategy was to play the video so fast that Mrs. Schutt could not see what had actually occurred.  She asked them a number of times to slow down the video.  They eventually agreed.

56.   The surveillance video showed that Roell had taken hold of A.S.'s arm, turned it behind his back and held it in an "arm bar." Roell then "popped" his own arm and elbow up and powered it down, in a violently forceful manner against A.S.' arm and broke the bone.  A.S.' mother was outraged and called for Roell's job (and more).

57.   After A.S.' mother saw the video, Campbell and Burford changed their strategy in an attempt to make the cover-up work. So Campbell began to sing Roell's praises in the hope of making Mrs. Schutt feel guilty about wanting Roell fired. For instance, they said "he's a father and a good man" Further, that "Mr. Roell is one of our best teachers. He takes kids home with him. You [Mrs. Schutt] are ruining a good man." "Please don't ruin a good man."   But Mrs. Schutt was unmoved.

58. So Coburn changed her strategy from a defensive mode to a much more aggressive tone. In fact, she even had the audacity to say that A.S. came to school with his arm already broken, insinuating without saying so, that they would report A.S.' mother for child abuse. Burford then advised Coburn "to be quiet."

59. Like Benavidez, Ryder and Brown before them, neither Burford, Coburn nor Campbell reported the incident to the appropriate state authorities, as required by the Texas Family Code and their own Ethical Standards.

60. Nor did they report it to the District's Section 504 Coordinator to have it investigated for what it was, exploitation and injury to a child with a disability.

61. Nor did they do their own investigation.

62. A.S.' arm required three different arm casts over a period of almost three months. The injuries from the assault resulted in thousands of dollars of bills for the family.

63. When it gets cold or rains, his shoulder hurts and he cries.

64. He is re-traumatized each time it rains or gets cold.

65. Even though School Board policies and relevant Section 504 Jurisprudence required the District to address and help remedy the effects of the assault, they have refused to do so.

66. Despite the insistence of the Schutt family to have Roell terminated, Campbell and Burford ignored the videotape and the obvious signs of Roell's predatory and abusive behaviors.

67. Once again, Graydene Brown came to the rescue and she transferred Roell to the Hudson Chase Middle School, which as we know had an opening, because of the other teacher who had allegedly harassed a female student with a disability, who took his place at the Pathfinder Academy.

68. The second phase of the *Pass The Trash* and *Coverup* was now complete though silence was not assured. When Kelly left the Middle School, he told A.N.'s mother to "watch out" for Roell. Evidently Roell's assaultive behaviors were now well-known across the District, except for the parents of the Life Skills Classroom at Hudson Middle School.

69. On or around January 5, 2016, Michael Roell was formally removed from the Pathfinder Academy and was sent to the Hudson Middle School. He ended up in the same classroom with J.H. and A.N. where he repeated his assaultive ways.

F. THE SPRING OF 2016- THE PASS THE TRASH & COVER-UP THE ABUSE (III) IS EXPOSED

70. When Roell came to the HMS Classroom, the other teacher was gone so the room was without a teacher for six weeks, creating a difficult environment for staff.

71. Roell complained to the Principal, Jennifer Benavidez, but she stated if he told a parent about the shortage of trained staff he would be fired. That wasn't the only thing she wanted hidden.

72. Roell has reported that Benavidez instructed him to assess the boys in the bathroom, and asked him to keep what was termed a "dick log" to track their erections.

73. The parents were not to be told about these assessments.

74. Benavidez threatened him again, telling him that if he spoke with a parent about anything "below the waist" he would be fired.

75. In early February 2016, Mrs. Hooper began to observe changes in J.H. as he would withdraw for long periods of time.

76. As we now know, Roell had started to take J.H. A.N. and other male students to the bathroom and would shake excess urine off their penis after urinating, activities known to

Benavidez.

77. Roell and others kept this "dick log," ostensibly so there could be an educational rationale, though J.H. nor A.N. had any need or written plan on the topic.

78. Justin Peppel and Yolanda Walker, Aides in the classroom failed to see this practice as problematic and did not report it.

79. On one occasion A.N. yelled out in class "... don't touch me Mr. Roell, ... or I'll report you to the police ..." It was heard by an Aide (Yolanda Walker) who reported it to A.N.'s mother, but Walker failed to report the incident to Child Protective Services or anyone else.

80. At the same time, many male students were acting out at home, especially during periods of toileting and bathing.

81. Peppel reported that one student took his clothing off in class and started masturbating; nevertheless, he too failed to tell the parent or report the problem.

82. A number of parents complained to Benavidez.

83. Rosendo Santos specifically mentioned Roell. He also inquired as to why the previous teacher had been removed.

84. Cassie Jimenez also met with Benavidez and inquired about her child's behaviors, wondering if there were problems in the classroom.

85. Alisa Morales made the exact same complaints and also inquired as to why the previous teacher was removed in the fall.

86. Benavidez did not investigate any of their concerns or tell any of these parents about what happened in the classroom during the fall.

87. In April J.H. had a birthday party where boys and girls attended, including A.N.

88.    So did Roell and another staff member. Roell only played with the boys.

89.    Mrs. Hooper remembers seeing one boy run away from Roell.

90.    She also remembers that after the birthday party her son's behaviors worsened and would isolate himself in the bedroom.

91.    She soon received a call from Yolanda Walker, who told her that J.H. was reacting violently toward Roell. Mother told Walker about J.H.'s behaviors at home but Walker failed to report either to School Officials.

92.    On or around May 11th Mrs. Hooper received a call from A.N.'s mother, who told her both their sons had been sexually abused by Roell.

93.    For the first time she learned, that Roell was taking J.H. and A.N. (and others) to the bathroom, was watching them urinate, would touch their penis' and dry it off.  He even had some children completely undress.  J.H.'s mother immediately took her son to the police.

94.    J.H. was able to confirm Roell's actions and that he would even masturbate.

95.    Apparently, Roell would also move J.H., A.N., and others to specific areas in the classroom so Roell could separate them and get personal time with each.

96.    Walker also spoke with the police and told them Roell had no reason to go to the bathroom with J.H. or A.N. but did anyway.

97.    Walker also reported that Roell always sat close to J.H.

98.    Benavidez finally removed Roell but did not notify Mrs. Hooper or Mrs. Mares about her knowledge of Roell's behaviors.

99.    Soon all the parents of the 17 children in the class contacted Mrs. Hooper, noting the various problems their child was having (violent or withdrawn).

100. Many mentioned that they had contacted Benavidez about their child, Roell or both, but she had done nothing.

101. HMS Assistant Principal Ryder, another of Roell's supervisors, was also interviewed by the police. He confirmed that J.H. and A.N. did not need assistance in the restroom. He noted the District had a *Moving Toward Independence* Program ("MTI") program for students often with severe and profound disabilities. It gave authority to touch a student's penis or vagina if part of a student's education plan. Ryder noted J.H. and A.N. were higher functioning and there was no need for either to have assistance in the bathroom.

102. When interviewed by the police, Roell confirmed the noted activities and that J.H. liked to touch himself and liked to be touched.

103. An Aide, Justin Peppel told the police about the student would also drop his pants and masturbate and that School Administrators were aware that Roell spent a lot of time with children when he was off work. Peppel thought it was strange.

104. When the School Board met, the parents noted they each had brought their concerns to Benavidez about their child and why the teacher in the Fall Semester was replaced. They were not given answers.

105. Roell never should have been permitted to transfer to the HMS after he broke A.S.'s arm.

106. Further, Benavidez and other staff at the HMS knew about male children in class having significant behavioral problems at home and in class.

107. Importantly, much of those behaviors were directed at Roell.

108. Moreover, it was now well-known that he was taking boys to the bathroom and touching them, without any written authority to do so. Defendants allowed it to

happen, over and again.

109. The District has policies and procedures in place to protect students with disabilities, like J.H. and A.N., from such sexual harassment.

110. Those policies gave the parent information about their procedural safeguards, whether pursuant to Title IX or Section 504 or both.

111. For instance, neither Mrs. Schutt, Mrs. Hooper nor Mrs. Mares ever received notice of who the Section 504 Coordinator was for the District, in regard to investigating allegations of the discrimination based upon disability.

112. Additionally, neither Mrs. Hooper nor Mrs. Mares ever received notice of who the Title IX Coordinator was for the District, in regard to investigating allegations of the discrimination based upon sexual harassment.

113. In regard to both, none of the parents ever received information about the right to file a formal grievance with the School District, or with the Texas Education Agency or Office of Civil Rights.

114. Moreover, the District did not follow their own policies and procedures requiring the reporting of allegations of abusive behaviors.

115. The individual School District Defendants, Burford, Coburn and Brown did not investigate the abuse of A.S.  Because of this and other failures, J.H. and A.N. became more vulnerable to assault and sexual harassment by Roell.

116. The individual School District Defendant Benavidez did not investigate allegations of harassment of J.H. and A.N. and they became more vulnerable to assault and sexual harassment by Roell.

117.    In regard to all three students the District failed to remedy the effects of the abuse on the students: no psychological assessment, no school-based counseling, no offer to reimburse the parents for community-based counseling, no provision of an aide or shadow to observe them at the school, and no offer to provide social skills training as to how to deal with the harassment.

118.    Worse still is that Benavidez and Brown were not just deliberately indifferent to the rights of other Garland ISD Students but in fact were complicit in acting to cover up the incident where there were allegations a female student was sexually harassed by an HMS teacher.

119.    Burford, Coburn and Brown were also complicit in acting to cover up the incident where A.S. was injured by Roell, who later also injured J.H. and A.N.

120.    Benavidez was deliberately indifferent to the rights of J.H., A.N. and other Garland ISD Students in acting to cover up Roell's illicit activities.

121.    Because of their failures to remedy the effects of the abuse he experienced, A.S., J.H., and A.N. continue to have lasting and lingering effects of the sexual abuse he endured by the hands and eyes of Roell and indifference of the Garland Independent School District staff members including Burford, Coburn, Brown and Benavidez, as well as Walker and Peppel.

## VI.  STATE ACTION

122.    Plaintiffs re-allege and incorporate by reference the paragraphs stated above as fully stated verbatim herein and all those below, will incorporate by reference, as if fully stated therein, those above it.

123.    The Garland ISD Defendant and all the Individual Defendants in any and all matters were acting under color of state law when they subjected A.N. to the wrongs and injuries set forth

herein.

## VII.   UNCONSTITUTIONAL UNWRITTEN POLICY, PRACTICES & CUSTOMS

124.   Plaintiffs contend that the School District Defendant had a number of written policies and procedures to protect A.N. from exploitation, abuse and sexual harassment from a teacher with the School District. Such policies and procedures are intended to protect his constitutional rights.

125.   These policies and procedures were based upon well-developed and settled federal caselaw, federal rules, directives from federal executive agencies like the *Office of Civil Rights* with the United States Department of Education, directives from the National and Texas Association of School Boards, Texas Law, Texas Rules and Ethical Standards for educational professionals.

126.   As we know from the litany of facts noted above, the School District had actual policies, practices and customs in place, that fail and refuse to follow the written policies and procedures developed by the School Board, such failures and refusals, rising to the level of deliberate indifference thereby and a violation of the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, and for which A.S., J.H. and A.N. seek recovery pursuant to 42 U.S.C. §1983.

127.   In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *investigate* allegations of abuse of children with a disability, such failures injuring A.S., J.H. and A.N. thereby and giving rise to their claim for violation of their rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C.

§1983.

128.    In a related vein, and also in addition and in the alternative to the above, Administrative Staff with School District had an actual policy, practice and custom of failing to correctly *report* allegations of abuse of children with a disability, such acts and omissions injuring A.S., J.H. and A.N. thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

129.    In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *discipline* a staff member who was found to abuse children with a disability, such failures injuring A.S., J.H. and A.N. thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

130.    In addition, and in the alternative to the above the School District had an actual policy, practice and custom of *retaining* for employment of a staff member who was found to abuse children with a disability, such failures injuring A.S., J.H. and A.N. thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

131.    In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *train* staff members in regard to reporting allegations that a student with a disability was a victim of abuse, such failures injuring A.A.,

J.H. and A.N.  thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

132.  In addition, and in the alternative to the above the School District had an actual policy, practice and custom of failing to correctly *supervise* staff members in regard to reporting allegations that a student with a disability was a victim of abuse, such failures injuring A.S., J.H. and A.N. thereby and giving rise to their claim for violation of rights pursuant to the *Due Process Clause* Fourteenth Amendment of the Constitution of the United States, for which they seek recovery pursuant to 42 U.S.C. §1983.

## VIII.   14th AMENDMENT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

133.  A.S., J.H. and A.N. all have a constitutional right, pursuant to the Due Process Clause of the 14th Amendment to the United States Constitution, to be free from physical abuse by a District Employee.

134.  Defendants Benavidez, Brown, Coburn and Burford all had the legal duty to report the child abuse of A.S. and others to Child Protective Services but did not.

135.  Defendants Benavidez, Brown, Coburn and Burford all had the legal duty pursuant to Section 504 Jurisprudence to report allegations of the abuse of A.S., a child with a disability, to the School District's Section 504 Coordinator but did not.

136.  Defendants Benavidez, Brown, Coburn and Burford all had the legal duty pursuant to Title IX Jurisprudence to report allegations of the sexual harassment of the female student at the CMS, to the School District's Section Title IX Coordinator but did not.

137.  Defendants Benavidez had the legal duty pursuant to Title IX Jurisprudence to report

allegations of the sexual harassment of J.H. and A.N. to the School District's Section Title IX Coordinator but did not.

138.    Last, the facts as previously described demonstrate a *Civil Conspiracy* between all the Defendants both named and unnamed to cover up of the injury to J.H. by Roell violating his rights under the *Due Process Clause* of the 14th Amendment to the U.S. Constitution.

139.    These failures were the moving force in the abuse and injuries A.S., J.H. and A.N. experienced at the hands of these Individual Defendants.

140.    As such, Plaintiffs seek recovery pursuant to 43 U.S.C. §1983.

## IX.  CONSTITUTIONAL CLAIMS AGAINST ROELL

141.    42 U.S.C. §1983 protects a student at a public school from violations of their federally protected rights. In the instant case A.S., J.H. and A.N., each had their constitutional rights violated by Roell in the following manner and particulars.

A.    RIGHT TO BE FREE FROM UNREASONABLE RESTRAINT

142.    Plaintiffs contend that the acts and omissions of Roell upon A.S, J.H. and A.N. violated their rights to be free from unnecessary restraints pursuant to the Fourth Amendment of the Constitution of the United States for which they seek recovery pursuant to 42 U.S.C. §1983.

143.    Plaintiffs contend that the acts and omissions of Roell upon A.S, J.H. and A.N. violated their rights to be free from excessive force pursuant to the Fourth Amendment of the Constitution of the United States for which they seek recovery pursuant to 42 U.S.C. §1983.

B.    PROPERTY INTEREST

144.    Plaintiffs contend that the acts and omissions of Roell violated Plaintiffs' property interest in their education pursuant to the Due Process Clause of Fourteenth Amendment of the

Constitution of the United States for which each seeks recovery pursuant to 42 U.S.C. §1983.

## C.    LIBERTY INTEREST

145.    Plaintiffs contend that the acts and omissions of Roell violated Plaintiffs' protected liberty pursuant to the Due Process Clause of Fourteenth Amendment of the Constitution of the United States for which each seeks recovery pursuant to 42 U.S.C. §1983.

## D.    EQUAL PROTECTION CLAIM

146.    Plaintiffs contend that the acts and omissions of Roell violated Plaintiffs right to *Equal Protection* under the law, pursuant to the Equal Protection Clause of Fourteenth Amendment of the Constitution of the United States for which he seeks recovery pursuant to 42 U.S.C. §1983 in that Plaintiffs didn't receive equal access to educational services because of te acts and omissions of Roell.

## X.    CLAIMS RELATED TO THE REHABILITATION ACT OF 1973

147.    The Garland ISD receives federal funds and thus follows the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

148.    The implemented regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's needs and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

149.    Plaintiffs further assert that because the School District has failed to provide each student

a safe and non-hostile educational environment, such failures as noted above, have together and separately, contributed to violating their rights pursuant to Section 504, and the federal rules and regulations promulgated pursuant thereto.

150. In addition, each Plaintiff has a private cause of action for violation of the regulations promulgated under Section 504, due to the acts and omissions by the School District.

151. Likewise, in addition and in the alternative, the failures denoted herein by the School District Staff were a gross deviation from professional standards of care and injured Plaintiffs thereby.

152. The acts and omissions of the School District specifically undermined and interfered with Plaintiffs rights pursuant to Section 504 to be free from discrimination based upon disability.

153. Such acts, omissions and failures caused injuries to these Students.

## XI. CLAIMS RELATED TO THE AMERICANS WITH DISABILITIES ACT

154. In addition, and in the alternative to the above, the facts as previously described demonstrate violations of Title II of the *Americans with Disabilities Act*, 42 U.S.C. §12131, et seq. ("ADA").

155. Each Plaintiff is considered a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

156. The School Board is a "public entity" as defined in 42 U.S.C. §12131(1) and receives federal financial assistance to be covered by the mandate of the ADA.

157. The School Board and its schools are facilities and their operation constitutes a program and services for ADA purposes.

158. Specifically, and separate and apart from his Section 504 cause of action, each Plaintiff

alleges that the School Board failed and refused to reasonably accommodate and modify services to them, in violation of Title II of the ADA.

159.   Each Plaintiff was a victim of discrimination based upon disability by the acts and omissions of the School District.

160.   Such failures caused injuries to these Students with disabilities.

## XII.   CLAIMS FOR RELIEF PURSUANT TO TITLE IX

161.   Title IX specifically notes the standards of liability for a public entity in regard to the Title IX claim. The claimant must be a member of a protected class; he or she must be bullied, harassed or assaulted based upon membership in that class; the Defendant entity must be on notice as to the allegations; the Defendant entity must be deliberately indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities and/or other damages.  J.H. and A.N. easily satisfy all these threshold requirements.

162.   Plaintiffs further contend that these failures of the Defendant School District to have effective policies, procedures, practices and customs in place to assure J.H.a nd A.N. were not victims of bullying, harassment, or assault based upon gender, or based upon stereotypes based upon gender, and due to such failures violated their rights pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 et seq., upon which they now seek recovery.

163.   J.H. and A.N. experienced significant injuries thereby.

## XIII.   RATIFICATION

164.   Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

165.   The Garland ISD ratified the acts, omissions and customs of school district personnel and staff for causes related to intentional discrimination under both Section 504 and the ADA.

166.   As a result, the Garland ISD is responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of A.S., J.H. and A.N.

## XIV.   PROXIMATE CAUSE

167.   Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

168.   Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XV.   DAMAGES

169.   Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

170.   As a direct and proximate result of the School District's conduct, Each Plaintiff has suffered injuries and damages, for which each entitled to recover herein including but not limited to:

   a.   Loss of past educational opportunities;

   b.   Loss of future education opportunities;

   c.   Physical pain in the past;

   d.   Physical pain in the future;

   e.   Medical expenses in the past;

   f.   Medical expenses in the future;

g.    Mental anguish in the past;

h.    Mental anguish in the future;

i.    Mental health expenses in the past;

j.    Mental health expenses in the future;

k.    Physical impairment in the past;

l.    Physical impairment in the future;

m.    Various out-of-pocket expenses incurred by his family but for the acts and omissions of the School District; and

n.    Punitive damages against Roell, Burford, Coburn, and Benavidez.

171.    Attorney's fees and costs as permitted by law.

## XVI.    ADMINISTRATIVE EXHAUSTION

172.    The parties agree that administrative exhaustion, as otherwise required by the *Individuals With Disabilities Education Act* ("IDEA"), 20 U.S.C. §1415(l) is not warranted in this cause, as Plaintiffs make no claims related to any of the Students' right to a *Free Appropriate Public Education* ("FAPE") under IDEA or Section 504.

## XVII.    PLAINTIFFS REQUEST TRIAL BY JURY

## XVIII. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray in the manner and particulars noted above, and in an amount sufficient to fully compensate them for the elements of damages enumerated above, and enter a judgment against all Defendants, jointly and severally, including but not limited to the following relief;  recovery of attorney's fees and costs for the preparation and trial of this cause of action, and for its appeal if required, pursuant to Section 504, the ADA, Title IX,

42 U.S.C. §1983, §1985  and 1988; and 42 U.S.C. §2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, and for such other relief as this Court in equity, or law, or both, deems just and proper.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
Cirkiel & Associates, P.C.
SBN 00783829
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]

Mr. Anthony O'Hanlon, ESQ.
Attorney & Counselor At Law
SBN 15235520
111 South Travis Street
Sherman, Texas 75090
(903) 892-9133 [Telephone]
(903) 957-4302 [Facsimile]
ahanlon@somlaw.net [Email]

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this the 4th day of May, 2018 a true and correct copy of the above

and forgoing document was served on the parties listed below pursuant to the Federal Rules of Civil

Procedure and the Court's electronic filing system.


Ms. Meredith Prykryl Walker, Attorney
Walsh Gallegos, P.C.
105 Decker Court, Suite 600
Irving, Texas 75062
(214) 574-8800 [Telephone]
(214) 574- 8801 [Facsimile]
mwalker@wabsa.com [Email]
Attorney For Garland Independent School District

Michael Roell
3866 Pinebluff Lane
Rockwall, Texas 75032
(469) 528-7345 [Telephone]
cplroell@hotmail.com [Via Email]
Via Regular U.S. Mail


/s/ Martin J. Cirkiel
Martin J. Cirkiel